**Hennady ANDREYEV, Plaintiff,**

**v.**

**SEALINK INC, et. al; Defendants.**

**No. Civ. 00–1834(PG).**

United States District Court,
D. Puerto Rico.

May 25, 2001.

Fernando D. Castro–Maldonado, Gold-
man Antonetti & Cordova, San Juan, PR,
Richard J. Dodson, Kenneth H. Hooks,

III, Baton Rouge, LA, for Hennadiy Andreyev, plaintiff.

Jose F. Sarraga–Venegas, San Juan, PR, for Sealink, Inc., defendant.

Juan R. Rivera–Morales, Jimenez, Graffam & Lausell, San Juan, PR, for Terra Nova Insurance Company Limited, defendant.

## OPINION & ORDER

JUAN M. PEREZ–GIMENEZ, District Judge.

Now before the Court is Defendant Terra Nova Insurance Company's motion to dismiss for lack of personal jurisdiction. After meticulously considering the record and pertinent case law, the Court **DENIES** Defendant's motion.

## FACTUAL & PROCEDURAL BACKGROUND

The Plaintiff is a Ukrainian national who was employed as a seaman by Defendants Kristian Meszaros and Sealink Inc., abroad the vessel M/V "Sealink Express". On October 14, 1999, while the vessel was in port in St. Thomas, U.S. Virgin Islands, an accident occurred. The hydrophrone tank of the vessel exploded while Plaintiff was servicing it—causing severe injuries. Plaintiff brought suit in the District Court of Puerto Rico against the owners of the vessel and Terra Nova Insurance Company (Terra Nova) to recover for the injuries suffered and lost wages. Terra Nova reacted by submitting a motion to dismiss on personal jurisdiction grounds.

The M/V Sealink Express displays a Panamanian flag. The vessel is owned by Defendant Sealink, Inc. which operates the vessel out of Isla Verde, Carolina, Puerto Rico. The company is a corporation with its principal office in Puerto Rico [1]. The ultimate individual owner of the corporation and the vessel is Defendant Kristian Meszaros, a citizen of the United States and resident of Puerto Rico.

At the time of the accident, Sealink Express was insured by Defendant Terra Nova. Terra Nova is a corporation organized and existing by virtue of the laws of the United Kingdom with principal place of business at London, England. The company is not registered and/or authorized to conduct business under the laws of the Commonwealth of Puerto Rico, nor are any affiliates, subsidiaries or related companies incorporated or registered to do business in Puerto Rico. Terra Nova has never operated an office in Puerto Rico. It does not keep a telephone listing in Puerto Rico, nor does it maintain insurance agents as employees or independent contractors in Puerto Rico. The company does not advertise or hire employees in Puerto Rico.

The insurance policy in question identifies Sealink, Inc. as the assured and "Sealink Express" as the assured vessel. The trading region of the assured vessel is declared explicitly as "American Gulf/West Indies". Claims which are brought in "USA Jurisdictions" are recognized by the policy and carry a larger deductible. Moreover, some claims recognized by the United States are excluded by the policy.

The insurance coverage was not negotiated or arranged within Puerto Rico. Instead it was entered into at London, England, by Sealink's brokers. No officer or other representative of Terra Nova traveled to Puerto Rico in order to solicit or execute the contract of insurance.

---

1. The parties do not agree on whether at the time of the filing of Complaint, Sealink was a corporation in good standing with Puerto Rico's Department of State.

## SPECIFIC OR GENERAL PERSONAL JURISDICTION

█ *In personam* jurisdiction relates to the power of the Court over a Defendant. It has two varieties: the general and the specific. General personal jurisdiction is the power of the Court over a Defendant "which may be asserted in connection with suits not directly founded on forum based conduct...." *Donatelli v. National Hockey League*, 893 F.2d 459, 462–463 (1st Cir.1990). General jurisdiction may be asserted when defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state". *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992). Specific jurisdiction, on the other hand, may be relied upon "where the cause of action arises directly out of, or relates to, the defendant's forum based conduct." *Id.* at 1088–1089.

█ When personal jurisdiction is contested, plaintiffs bear the burden of proving the facts upon which the existence of jurisdiction depends. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *General Contracting and Trading Company v. Interpole, Inc.*, 899 F.2d 109, 115 (1st Cir.1990). It is Plaintiffs' burden to establish sufficient facts to sustain general personal jurisdiction. *See Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 207 n. 9 (1st Cir.1994). Nothing in the record before the Court, however, suggests that Terra Nova engaged in continuous and systematic activity within Puerto Rico. Plaintiff has thus failed to carry their burden as to general personal jurisdiction.

The Court will assume that general jurisdiction is lacking and will focus exclusively on specific jurisdiction. *See Pritzker*, 42 F.3d at 60 (where the Court assumed no general jurisdiction because the record was silent as to whether defendant engaged in continuous and systematic activity within the forum state).

## PUERTO RICO'S LONG–ARM STATUTE

█ Congress has not authorized nationwide service of process in admiralty cases. Consequently, Puerto Rico's long arm statute must be applied when determining whether Defendant Terra Nova is amenable to suit in this Court. *See Colon v. Gulf Trading Co.*, 609 F.Supp. 1469, 1474–1475 (D.P.R.1985) (Court must use Puerto Rican long-arm statute because admiralty statutes do not provide for nationwide service of process); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44 (2nd Cir. 1991) (Stating that the law of the forum state—here, New York—governs the issue of personal jurisdiction in admiralty cases); *See Also DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 283 (3rd Cir.1981).

█ Puerto Rico's long arm statute provides that a Puerto Rico based court may extend jurisdiction over a person not domiciled in Puerto Rico "if the action or claim arises because said person ... transacted business in Puerto Rico personally or through an agent...." P.R.Laws Ann. tit. 32, app. III, R.4.7(a)(1) (1984 & Supp. 1989) [2]. The statute extends personal juris-

---

**2.** Puerto Rico's long-arm statute is expressed in Rule 4.7 of the Puerto Rico Rules of Civil Procedure which provides, in pertinent part, "(a) Where the person to be served is not within Puerto Rico, the General Court of Justice of Puerto Rico shall have personal juris-

diction over said nonresident as if he were a resident of the Commonwealth of Puerto Rico, if the action or claim arises as a result of the following:
(1) Such person or his agent carries out business transactions within Puerto Rico.

diction to the full extent of constitutional authority. *See Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994) (*citing Dalmau Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9, 10 (1st Cir.1986)) and *Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir. 1983). That is, the exercise of personal jurisdiction by Puerto Rican courts is limited only by the due process analysis of *International Shoe* and succeeding Supreme Court cases. *Colocotroni*, 628 F.2d at 668.

■ Before extending personal jurisdiction, this Court is required to find that (1) personal jurisdiction is authorized by the local statute and (2) the exercise jurisdiction does not violate the due process requirement of "minimum contacts". *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 667 (1st Cir. 1980); Citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 289, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Given that the Puerto Rican statute extends personal jurisdiction to the full extent of constitutional authority, the state long arm statute analysis and due process analysis merge into one. The sole question before the Court is whether it is constitutionally permissible to require Terra Nova to litigate in the Federal District Court seated in Puerto Rico.

## DUE PROCESS

■ Due process protects individuals defendants from being bound by judgments of a forum with which they lack meaningful relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The constitutional protection requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (Stewart, J., concurring in the judgment), before personal jurisdiction is extended. The "fair warning" requirement permits potential defendants to structure their conduct "with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *See Also Burger King Corp.*, 471 U.S. at 471, 105 S.Ct. 2174. "The constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum," *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" *International Shoe Corp.*, 326 U.S. at 316, 66 S.Ct. 154.

■ The inquiry into minimum contacts is far from exact: "the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative". *See United Electrical Workers v. 163 Pleasant St.*, 960 F.2d 1080, 1088 (1st Cir.1992) *citing International Shoe*, 326 U.S. at 319, 66 S.Ct. 154. The inquiry is highly idiosyncratic, involving individualized assessment and factual analysis of the precise mix of contacts that characterize

(2) Having participated by himself or by his agent, in tortious acts within Puerto Rico or
\*\*\*
(4) Being involved in an accident in Puerto Rico in the operation, by himself or through his agent, of a freight or passenger transportation business in Puerto Rico or between Puerto Rico and the United States or between Puerto Rico and a foreign country, or the accident occurs outside of Puerto Rico in the operation of such business, when the contract has been executed in Puerto Rico."
32 L.P.R.A., App. II, R. 4.7.

each case. *See United Electrical Workers,* 960 F.2d at 1088. "In construing such a weighbeam, the measuring points will rarely be written in gleaming black or glistening white. 'The greys are dominant and even among them the shades are innumerable.'" *Id.* citing *Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948).

 To sharpen the logic of the minimum contacts inquiry, the First Circuit has developed a tripartite analysis:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum state activities. Second, the defendant's in state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making defendant's involuntary presence before the state court foreseeable. Third the exercise of jurisdiction must, in the light of the gestalt factors, be reasonable.

*Id.See also Ticketmaster,* 26 F.3d at 206; *Pizarro v. Hoteles Concorde Int'l, C.A.,* 907 F.2d 1256, 1258 (1st Cir.1990). In applying this test, the Court is keenly aware of the fact that the Supreme Court has occasionally suggested that the test for measuring minimum contacts for insurance companies may be somewhat less stringent than for other non-resident corporations. *Colocotroni,* 628 F.2d at n. 18. *See also, McGee v. International Life Insurance Corporation.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); cf. *Denckla,* 357 U.S. at 252, 78 S.Ct. 1228. In cases against insurance companies, the forum state has a high public policy interest in promoting effective redress of injuries.

## RELATEDNESS

 The concept of relatedness is, relatively speaking, a "flexible, relaxed standard". *Pritzker,* 42 F.3d at 61; *See also Ticketmaster,* 26 F.3d at 207. Foreseeability, although not determinative, is an integral consideration when deciding whether the non-resident's contacts with the forum state are substantially related to the underlying litigation. *See World–Wide Volkswagen Corp.,* 444 U.S. at 295, 100 S.Ct. 559 The concept of foreseeability is implicit in the relatedness requirement. *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 580; *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. 2174. Whether a non-resident could foresee being hailed into the courts of a foreign jurisdiction is of special import when the non-resident is an insurance company. *See Colocotroni,* 628, F.2d 652; *American and Foreign Insurance Assn. v. Commercial Ins. Co.,* 575 F.2d 980 (1st Cir.1978); *Rossman v. State Farm Mutual Insurance Co.,* 832 F.2d 282 (4th Cir.1987); *Eli Lilly & Co. v. Home Ins. Co.,* 794 F.2d 710 (D.C.Cir.1986). The inherent foreseeability of consequences is one of the keystones of personal jurisdiction. *Vencedor Manufacturing Corp., v. Gougler Industries Inc.,* 557 F.2d 886, 891–892 (1st Cir.1977).

In *McGee,* the Supreme Court ruled that a California court could properly exercise jurisdiction over an out-of-court state insurer even though the insurer had no agent or representative in the forum state and had never transacted business there. In that case, the Court suggested that in order to be subject to the jurisdiction of the forum state, a nonresident need have only one contact with the forum, so long as that contact is meaningful. *See McGee,* 355 U.S. at 223, 78 S.Ct. 199 ("It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state"). "Accordingly, *McGee* stands for the proposition that minimum contacts is not neces-

sarily a numbers game: a single contract can fill the bill." *Pritzker*, 42 F.3d at 61.

In the case at hand, the Court is satisfied that the cause of action is sufficiently related to Defendant's minimum contacts. "The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. . . . Rather, it is that the defendants' conduct and connection with the forum is such that he should reasonably anticipate being healed into the court there." *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559. The insurance policy at issue here, although representing only a single contact with Puerto Rico, is sufficiently meaningful and thus "fills the bill". The policy itself identifies "Sealink. Inc.", as the assured. The trading region of the assured vessel is explicitly identified in the policy as "American Gulf/West Indies". Thus, the policy makes abundantly clear that Terra Nova knowingly contracted with a Puerto Rican based company to insure a vessel which would travel repeatedly within the jurisdictional grounds of this Court. Behaving in this way, Terra Nova could easily foresee that it could be hailed into the courts of this jurisdiction. Terra Nova could have easily structured its primary conduct to gain some "minimum assurance as to where that conduct will and will not render [it] liable to suit." *Id.* Yet, Terra Nova failed to do so.

Terra Nova's contacts provided a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer*, 433 U.S. at 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (Stewart, J., concurring in the judgment). The insurance policy is sufficiently related to the underlying litigation—a suit for damages from an accident that occurred in the insured vessel.

## PURPOSEFUL AVAILMENT

As part of the minimum contacts analysis, this Court must determine if the non-resident defendant has purposefully availed itself of the benefits and protections tendered by the laws of the forum State—here, Puerto Rico. *Burger King Corp.*, 471 U.S. at 474–75, 105 S.Ct. 2174. In this regard, the Supreme Court has stated that:

> The application of [the minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

"The jurisprudence of minimum contacts casts a wide net, and a non-resident defendant may not always be able to elude that net by such simple expedients as remaining physically outside the forum or limiting contact with the forum to a single commercial transaction. Rather, courts must look beyond these formalistic measures and evaluate the nature of the contacts and, relatedly, the degree to which they represent a purposeful availment of the forums protections and benefits." *Pritzker*, 42 F.3d at 62.

An evaluation of the nature of the contact in this case leads to the conclusion that Terra Nova purposefully availed itself if the protection and benefits of the laws of Puerto Rico. An insurer has a commercial interest in knowing how, and to what degree, an insured has contacts with a forum state. This commercial interest provides the rationale for the First Circuit's rule

that an insurer should foresee being sued in a jurisdiction where its insured has substantial contacts. *Eli Lilly and Co. v. Home Ins. Co.*, 794 F.2d 710, 721 (D.C.Cir. 1986).

In *American & Foreign Ins. Assn.*, 575 F.2d at 982, the Court found that a products liability insurer had purposefully availed itself of the privilege of conducting activities within Puerto Rico where (1) the insured had shipped its products into the forum state, and (2) the terms of the policy "assured full knowledge of both the volume of export sales [and] the actual location of the customers." In *Colocotroni*, the First Circuit indicated that the lack of an explicit understanding between the insurer and insured indicating that the insurer knew of the insured's contact with the forum state did not bar the exercise of in personam jurisdiction where the insurer plainly knew that the insured was likely to have substantial contacts with the forum. *Colocotroni*, 628 F.2d at 669. In that same case, and of critical importance to this Court's holding today, the Court held that

> ... an insurer such as West of England, has the power through its contracts of insurance meaningfully to influence the course taken by insured vessels. **By limiting coverage to specified jurisdictions, West of England could be reasonably certain it would not be hailed into court in an undesired forum.** In other words, an insurer is not at the mercy of the insured owner's unilateral choice of destination in the same way a seller of chattels is at the mercy of the buyer.... **Where, as here, the insurer has the means available to structure its primary conduct so as to control the area within which it will be subject to direct action, where it is undoubtedly aware that the objects of its policies are regularly present in a particular jurisdiction,** and where it not only does not act to curtail such pres-

ence but actively promotes it by providing contractual services in the jurisdiction, we hold that such an insurer is amenable to personal jurisdiction in the forum.

*Colocotroni*, 628 F.2d at 670.

In this case there can be no question but that Terra Nova plainly knew that the vessel it insured would constantly visit the West Indies and hence, Puerto Rico. Terra Nova cannot now claim that it was somehow unforeseeable that it be haled into court in the one jurisdiction where Sealink, Inc. and the M/V Sealink Express would most likely be subject to suit. The insurance company could have structured its policy so as limit coverage to specified jurisdictions. Nonetheless, Terra Nova not only failed to limit its coverage, but consciously approved and signed off on an insurance policy for a Puerto Rican company, that operated a vessel within the jurisdictional waters of Puerto Rico and whose vessels' main port was Isla Verde, Puerto Rico. An insurance company that behaves in this way cannot be said to have failed to avail itself of the privilege and benefits of conducting activities within the forum state.

## FAIR PLAY AND SUBSTANTIAL JUSTICE

■ Having determined that Terra Nova's insurance agreement falls within the ambit of sufficient minimum contacts, the Court proceeds to the third and final element of the analysis and inquires whether the exercise of jurisdiction over Terra Nova in the circumstances of this case would offend traditional notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. 154).

■ "Fair play" and "substantial justice" are not the most categorical of legal formulations. For that reason, the First Circuit has established a five-factor gestalt[3] analysis. The factors are: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *United Electrical Workers,* 960 F.2d at 1088. The factors are designed to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations. *See Ticketmaster,* 26 F.3d at 210, 26 F.3d 201. They "are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice." *Id.* at 209, 26 F.3d 201.

When applied to the case at hand, the factors tip the balance slightly in favor of exercising jurisdiction.[4] As to the first factor, there can be no question that it would be burdensome for Terra Nova, a company based in the United Kingdom, to litigate in the District Court of Puerto Rico. Nonetheless, this burden is offset by two all important factors. First, Terra Nova knew that it was insuring a Puerto Rican based company and its vessel. The vessel operated out of Puerto Rico and did business, on a regular basis, within the territorial waters of Puerto Rico. This was explicit in the contract of insurance. Second, Terra Nova's activity with Puerto Rico can be characterized as being an "in forum" economic activity. As a result of Defendant's business activity, a Puerto Rican based company and its vessel obtained insurance. The Supreme Court has stated that "it usually will not be unfair to subject [a non-resident] to the burdens of litigating in another forum for disputes relating to [in -forum economic] activity." *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174. As result of the offsetting factors, the first gestalt factor is neutralized to the point that it tips the balance only *slightly* towards "unreasonableness" and "unfairness".

The second factor—the interest of Puerto Rico in having a Puerto Rico based court adjudicate the controversy—weighs in favor of the exercise of jurisdiction. Puerto Rico, and the Federal District Court sitting in Puerto Rico, has an inherent interest in administrating justice to its citizens. Here, although the Plaintiff itself is not a citizen of the United States or resident Puerto Rico, one of the defendants resides in the Puerto Rico and the vessel in question operates out of Puerto Rico. As a result of this litigation, the rights of Sealink, Inc. vis-vis its insurer will be adjudicated. Puerto Rico has an interest in adjudicating a controversy where the rights of one of its citizens are at stake.

**3.** The First Circuit has called these factors the gestalt factors because "in any given case, they may neither be amenable to mechanical application nor be capable of producing and open-and-shut result." *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 150 (1st Cir.1995).

**4.** When analyzing the factors the Court is aware that "that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiffs showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *See Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990)

The third gestalt factor is Plaintiff's interest in obtaining convenient and effective relief. This consideration also cuts in favor of jurisdiction. A court must always "accord plaintiffs' choice of forum a degree of deference in respect to the issue of its own convenience". *Ticketmaster*, 26 F.3d at 211. Here, Plaintiff has chosen Puerto Rico. The Court must not only give deference to this choice, but must also factor in the inconvenience that would result by obliging Plaintiff to sue elsewhere. Presumably, Plaintiff in this case would have to go all the way to the United Kingdom to obtain relief from Terra Nova.

The fourth factor—the judicial systems's interest in obtaining the most efficacious resolution of the controversy—similarly counsels towards the exercise of jurisdiction. If this Court were to decide not to exercise jurisdiction over defendant, the dispute would most certainly bifurcate among different jurisdictions. Such result would contravene the goal of judicial economy.

The last factor—the common interests of all sovereigns in promoting substantive social policies—, does not favor one outcome over the other. As such, it is the ruling of this Court that the exercise of personal jurisdiction over Defendant Terra Nova would not offend traditional notions of "fair play and substantial justice". It is reasonable to exercise jurisdiction over a defendant that insured a Puerto Rican company and its vessel. The company gained economically from the contact with Puerto Rico and could foresee being hailed into the courts of this jurisdiction. As the Supreme Court has stated, "it usually will not be unfair to subject [a non-resident] to the burdens of litigating in another forum for disputes relating to [in -forum economic] activity". *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174.

## CONCLUSION

Terra Nova's contacts with Puerto Rico are sufficiently significant to warrant the exercise of personal jurisdiction in the District Court of Puerto Rico. This ruling is in tune with the principle instructing that insuring property located within a jurisdiction, even if the presence of that property is transitory, subjects a foreign marine-insurer to jurisdiction on suits over such insurance. See Colocotroni, 628 F.2d at 667–70; *American & Foreign Ins. Ass'n*, 575 F.2d at 982; Atlantic Lines, Ltd. v. M/V Domburgh, 473 F.Supp. 700, 702–04 (S.D.Fla.1979). Additionally, no constitutional barriers exist to the Court's exercise of personal jurisdiction over the insurance company in this case. Terra Nova's contacts with Puerto Rico satisfies the minimum contacts test and the exercise of jurisdiction would not offend notions of "fair play" and "substantial justice". Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED**.

*IT IS SO ORDERED.*