**CHAMPION EXPOSITION SERVICES, INC.**
Plaintiff

v.

**HI–TECH ELECTRIC, LLC, Defendant.**

**No. CIV.A. 03–10078–RCL.**

United States District Court, D. Massachusetts.

July 30, 2003.

Annapoorni R. Sankaran, Gary R. Greenberg, Greenberg Traurig, LLP, Boston, MA, for Plaintiff.

Michael J. Connolly, Jane Biondi, Hinckley, Allen and Snyder, LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

LINDSAY, District Judge.

Champion Exposition Services, Inc. ("Champion"), the plaintiff in this action, is a Massachusetts corporation that acts as a general contractor to exhibitors at trade shows and similar gatherings. It has sued the defendant, Hi–Tech Electric, LLC ("Hi–Tech"), a Nevada limited liability company, for monetary and equitable relief relating to a joint venture agreement under which Hi–Tech was to provide electrical contracting services to customers of Champion in the California and Nevada markets. Champion alleges that Hi–Tech has failed to pay commissions due for electrical services rendered; has failed to pay licensing fees relating to use of Champion's proprietary accounting and billing software; and has underpaid certain commissions, with respect to which it refuses to provide Champion with an accounting. The complaint is in four counts, alleging breach of contract; breach of the implied

covenant of good faith and fair dealing; and unfair or deceptive trade practices in violation of Mass. Gen. Laws ch. 93A. The final count requests injunctive relief with respect to the proprietary software and seeks assurances from Hi–Tech regarding services that were to have been performed in January and February of 2003.

Hi–Tech has filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2), asserting that this court lacks *in personam* jurisdiction over Hi–Tech. Should this challenge be found unpersuasive, Hi–Tech has further moved to transfer this action to the United States District Court for the District of Northern California pursuant to 28 U.S.C. § 1404(a), the federal venue statute. For the reasons stated below, Hi–Tech's motions both to dismiss for lack of personal jurisdiction and, in the alternative, to transfer venue to the Northern District of California are DENIED.

## I. Background

In June of 1999, Ronald Simon ("Simon"), president of Hi–Tech, traveled to Massachusetts to meet with Mark Epstein ("Epstein"), Christopher Valentine ("Valentine") and Stephen McNally ("McNally") at Champion's offices. Epstein and Valentine are the president and chief financial officer, respectively, of Champion, but McNally's position with Champion is not specified. *See* Declaration of Ronald Simon ("Simon Decl.") at ¶ 15; Affidavit of Mark Epstein in Opposition to Defendant's Motion to Dismiss or Transfer ("Epstein Aff.") at ¶ 5 [1]. These meetings culminated in a letter agreement, dated September 1, 1999 and executed by Epstein and Simon, detailing the terms by which Hi–Tech was to be formed as a joint venture between Epstein and Champion. *See* Ex. 2 to Epstein Aff. (the "Letter Agreement"). Although the Letter Agreement apparently contemplated the execution of further documents in furtherance of the relationship between Champion and Hi–Tech, no such documents have been presented to me. Champion bases its claim for unpaid and underpaid commissions owing to it for services provided by Hi–Tech and Champion's clients on the terms outlined in the Letter Agreement as well as a business plan submitted by Simon to Champion during the course of their negotiations. *See* Exhibit 1 to Epstein Aff. (Business Plan dated August 2, 1999).

Simon paid additional visits to Champion's Massachusetts offices, in June and November of 2002, to discuss business matters. Simon Decl. at ¶ 15. According to affidavits submitted by Champion, other Hi–Tech personnel also visited Champion's offices in Massachusetts, and Hi–Tech's employees were in regular contact via telephone, mail and e-mail with Champion employees located in Massachusetts. *See* Affidavit of Christopher Valentine in Opposition to Defendant's Motion to Dismiss or Transfer ("Valentine Aff.") at ¶¶ 14–17. Finally, Champion asserts that commissions that were paid by Hi–Tech were remitted to Champion's Massachusetts office, and Hi–Tech's own order and payroll

---

1. Champion bears the burden of establishing that personal jurisdiction over Hi–Tech is appropriate. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir. 1995). To that end, Champion also has presented, and I may consider, affidavits and verified materials intended to establish a *prima facie* case for the validity of the exercise of jurisdiction over Hi–Tech—i.e., evidence that "if credited, is enough to support findings of all facts essential to personal jurisdiction[.]" *Id.* (quoting *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992) (internal quotation marks omitted)). In addition, I may consider statements of the defendant to the extent that such statements are not in dispute. *See Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998) (citing *Topp v. CompAir Inc.,* 814 F.2d 830, 836–37 (1st Cir.1987)).

databases are maintained at Champion's Middleboro, Massachusetts facility. *See id.* at ¶¶ 10–12.

## II. Discussion

### A. Personal Jurisdiction

 Because this court cannot decide a controversy if no personal jurisdiction can be had over the defendant, a plaintiff bringing an action must make a showing that such jurisdiction exists. *See Foster–Miller,* 46 F.3d at 145. The so-called prima facie method for testing the appropriateness of personal jurisdiction is the "most conventional" means employed by courts. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 51 (1st Cir.2002), *cert. denied sub nom. Scruggs v. Daynard,* 537 U.S. 1029, 123 S.Ct. 558, 154 L.Ed.2d 444 (2002) (quoting *Foster–Miller,* 46 F.3d at 145 (internal quotation marks omitted)). To establish a prima facie case for asserting personal jurisdiction over Hi–Tech, Champion " 'must go beyond the pleadings and make affirmative proof.' " *Jana Brands, Inc. v. NexiFM, Inc.,* 2003 WL 164251, at *1 (D.Mass. Jan. 23, 2003) (quoting *Chlebda v. H.E. Fortna and Brother, Inc.,* 609 F.2d 1022, 1024 (1st Cir.1979)). I note that my role in evaluating this evidence is not that of a factfinder; rather, properly made assertions by Champion are taken as true, and Hi–Tech's amenability to jurisdiction in this court is to be determined as a matter of law. See *United States v. Swiss American Bank, Ltd.,* 274 F.3d 610, 619 (1st Cir.2001).

 A federal court presiding over a case in which subject matter jurisdiction is premised on diversity of citizenship of the parties must apply the law of the forum state to determine whether personal jurisdiction over the nonresident party is appropriate. *See Daynard,* 290 F.3d at 51. In Massachusetts, a court may exercise personal jurisdiction over a foreign defen-

dant if such jurisdiction is authorized by the state long-arm statute, and its exercise does not offend the Due Process Clause of the Fourteenth Amendment. *See Tatro v. Manor Care, Inc.,* 416 Mass. 763, 772, 625 N.E.2d 549 (1994). Such jurisdiction may be either specific, meaning there exists a "demonstrable nexus" between the plaintiff's claim and the defendant's contacts with the forum state, or general, where no such nexus exists but the defendant's contacts with the forum state are "continuous and systematic." *Mass. Sch. of Law at Andover, Inc.,* 142 F.3d at 34–35 (internal quotation marks and citations omitted). Champion argues *passim* that Hi–Tech's contacts with Massachusetts are sufficient for assertion of personal jurisdiction under the general jurisdiction theory, but relies most heavily on the notion that jurisdiction is appropriate in this forum because its claims arise from its agreement to participate in the launch of Hi–Tech and to sell Hi–Tech's services in exchange for commissions. *See* Memorandum of the Plaintiff Champion Exposition Services, Inc. in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue ("Pl. Opp.") at 10 n. 1.

 *i. Massachusetts Long–Arm Statute.* The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3(a), made applicable by virtue of Fed.R.Civ.P. 4(e), establishes jurisdiction when the claim arises from a natural or legal person's "transacting any business in this commonwealth." Champion must proffer evidence tending to show the following in order to establish jurisdiction under § 3(a): Hi–Tech "transacted business" in Massachusetts, and the claims set forth in the complaint "arose from" such transaction of business. *See Tatro,* 416 Mass. at 767, 625 N.E.2d 549. This dispute bears a very close resemblance to another case

recently resolved in this district which involved a Las Vegas, Nevada hotel and a Massachusetts corporation seeking a refund of deposits paid for a conference that was cancelled. In *Workgroup Technology Corporation v. MGM Grand Hotel, LLC,* 246 F.Supp.2d 102 (D.Mass.2003), the Massachusetts plaintiff initiated contact with the hotel, which responded by sending telephone calls, e-mails, and faxes to the plaintiff "in Massachusetts for the purpose of negotiating the terms of the contract[.]" *Id.* at 110. These contacts were held to be sufficient to satisfy the "transacting business" requirement of the Massachusetts long-arm statute, notwithstanding the fact that they were initiated by the Massachusetts party and the defendant never physically entered Massachusetts to discuss the terms of the deal. *See id.*

Hi–Tech's contacts with Massachusetts were at least as solid as those discussed in the *Workgroup Technology* decision. The submissions provided by the parties indicate that Simon traveled to Massachusetts in June of 1999 to discuss the terms on which the joint venture would be formed; that he subsequently sent to Champion a term sheet or business plan in furtherance of his negotiations with Champion; and, finally, that he executed the Letter Agreement with Champion for the formation of Hi–Tech, which agreement contemplated that Champion would receive commissions from Hi–Tech's jobs. The Letter Agreement, significantly, specified that it would be governed by Massachusetts law. *See* Letter Agreement, ¶ 11. While the presence of such a clause is far from dispositive of the personal jurisdiction issue, it properly can be viewed as probative of whether Hi–Tech deliberately chose to avail itself of the rights and protections afforded by Massachusetts law in dealing with Champion, thus constituting an additional contact with the jurisdiction. *See Marine Charter & Storage Ltd., Inc. v. Denison Marine, Inc.,* 701 F.Supp. 930, 934 (D.Mass.1988)

(discussing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 481–82, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985)).

Hi–Tech cites a First Circuit case which, it claims, would define Hi–Tech's contacts with Massachusetts as "purely incidental" to the performance of its contract with Champion and therefore insufficient to support personal jurisdiction under the long-arm statute. In *Lyle Richards International, Ltd. v. Ashworth, Inc.,* 132 F.3d 111 (1st Cir.1997), the court stated that the " 'arising from' " language in the Massachusetts long-arm statute "is to be generously construed in favor of asserting personal jurisdiction" by applying a " 'but for' causation test[.]" *Id.* at 114. The court went on to hold that the contacts alleged in that case were *not* sufficient to support exercise of personal jurisdiction over the California defendant, noting that certain asserted visits and communications to Massachusetts by the defendant arose after the execution of the contract, rendering them "extraneous to the formation of the Agreement[.]" *Id.*

*Lyle Richards,* however, is distinguishable from this action in that the contacts I have discussed above—the June 1999 meeting, the transmission of the August 1999 business plan and the execution in September 1999 of the Letter Agreement—were, in fact *"instrumental in the formation of the contract." Id.* (quoting *Hahn v. Vermont Law Sch.,* 698 F.2d 48, 51 (1st Cir.1983)) (internal quotation marks omitted) (emphasis in original). The defendant in *Lyle Richards* never visited Massachusetts during the course of the contract negotiations, nor was there any suggestion that Massachusetts law would govern the contract in that case. To be sure, many of the contacts with Massachusetts in this case (e.g., e-mails and telephone calls to discuss issues relating to the billing software), which are

cited by Champion in support of its argument that Hi–Tech was transacting business in Massachusetts, do post-date the negotiation of the Letter Agreement and may well be "purely incidental" to the origin of Champion's claim. However, I have not considered those additional alleged contacts in concluding that jurisdiction is appropriate under the long-arm statute. I hold that Champion has asserted contacts by Hi–Tech with this forum that were "instrumental (not incidental) in the formation of the contract in dispute." *Workgroup Tech.*, 246 F.Supp.2d at 111 (distinguishing facts in that case from *Lyle Richards* ).

■ *ii. Due Process Analysis.* Once the appropriateness of exercising personal jurisdiction has been established under the long-arm statute, the next task is to determine whether the plaintiff has met its burden of establishing that requiring the defendants to litigate the case in Massachusetts comports with the strictures of the Fourteenth Amendment to the Constitution. In the First Circuit, a showing of constitutional sufficiency differs somewhat from the factors needed to meet the standards of the long-arm statute. "That showing has three aspects: First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reason-

able." *Barrett v. Lombardi,* 239 F.3d 23, 26 (1st Cir.2001) (citing *United Electrical, Radio & Machine Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1089).

The first prong of this inquiry, often referred to as the "relatedness test," requires the court to take into consideration the fact that this is a suit for breach of contract. "In contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." *Phillips Exeter Acad. v. Howard Phillips Fund,* 196 F.3d 284, 289 (1st Cir.1999) (citing *United Electrical, Radio & Machine Workers of America,* 960 F.2d at 1089–90).[2] Of course, the mere existence of a contractual relationship will not be sufficient to meet this test; "[r]ather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.' " *Id.* at 290 (quoting *Burger King,* 471 U.S. 462, 479, 105 S.Ct. at 2185, 85 L.Ed.2d 528).

As I have discussed above, in connection with the statutory requirements for asserting personal jurisdiction over Hi–Tech, it is clear from the facts presented by Champion that Simon's pre-contractual visit and the transmission back and forth of the business plan and Letter Agreement were instrumental in forming the agreement

---

**2.** Where a plaintiff's cause of action is, in essence, a tort claim, the First Circuit has required a somewhat different standard under which it must be shown that the defendant's contacts with the forum state were the proxi-

mate cause and not merely a but-for cause of the plaintiff's injury. *See Phillips Exeter Acad.,* 196 F.3d at 289 (noting appropriateness of differentiating between contract and tort claims.)

whereby Hi–Tech was to pay commissions to Champion.

■ The second prong of the Fourteenth Amendment analysis is whether Hi–Tech's contacts with Massachusetts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of Massachusetts laws and making the possibility of being haled into court in Massachusetts foreseeable. "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 716 (1st Cir.1996) (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir.1995)). It is clear to me on the evidence proffered by the plaintiff, as well as from the defendant's own statements, that Hi–Tech's contacts were deliberate and not random. Simon traveled across the country to meet with Champion's officers and discuss business prospects, and Hi–Tech subsequently entered into a business arrangement which expressly contemplated an ongoing relationship with Champion's Massachusetts office, where payments were processed and records were kept. These contacts, intended to build and maintain a relationship with a Massachusetts corporation, rendered foreseeable the possibility of being haled into a Massachusetts court, as did the inclusion in the Letter Agreement of a clause designating Massachusetts law as the governing law for the contract.

■ Finally, the Fourteenth Amendment analysis requires me to determine whether the exercise of jurisdiction, in light of the so-called gestalt factors, would be reasonable. These factors are:

(1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Nowak*, 94 F.3d at 717 (citing *United Electrical, Radio & Machine Workers of America*, 960 F.2d at 1088). "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." *Id.* Upon analysis of the evidence proffered, I conclude that these factors weigh in the plaintiff's favor.

■ I do not doubt that it would be burdensome for Hi–Tech to defend itself in Massachusetts. However, this is a problem for any party litigating in a foreign jurisdiction, and the First Circuit has held that a defendant seeking to avoid the costs and burdens of litigating far from home must demonstrate that being subject to jurisdiction in a distant forum "is onerous in a special, unusual, or other constitutionally significant way." *Id.* at 718 (citation omitted). Hi–Tech has not offered anything beyond the statement that Hi–Tech is a "small, new business" with "a small number of employees, all of who [sic] are actively involved in the daily operations of sustaining and building a young business," Memorandum of Law in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue ("Def.Mem.") at 16, and a citation to a District of Puerto Rico case that required a United Kingdom-based party to submit to jurisdiction in Puerto Rico despite the obvious inconvenience of doing so. *See Andreyev v. Sealink, Inc.*, 143 F.Supp.2d 192, 201 (D.P.R.2001) (burden of litigation in forum offset by foreseeability and in-forum contacts, neutralizing first gestalt factor to a state of only slight unfairness). Hi–Tech is under no greater a burden than any other non-resident defendant—indeed, both the *Andreyev* case

cited by Hi–Tech and *Nowak*, in which the defendant was located in Hong Kong, can be said to have imposed much more onerous conditions on the defendants than would affect Hi–Tech in this case. *Nowak* also states that an important purpose of this gestalt factor, notably absent in this case, is the need to protect remote defendants from harassing litigation. *See Nowak*, 94 F.3d at 718. Because no special burden would attach to Hi–Tech, and because no claim has been made that Champion brings this action to harass the defendant, this gestalt factor will not tip the balance in Hi–Tech's favor.

With regard to the second of the gestalt factors, it is clear that Massachusetts has a significant interest in ensuring that contracts entered into by Massachusetts residents are given full effect. This holds doubly true where the contract itself is governed by Massachusetts law. The defendant claims that California has a greater interest because "plaintiff claims California consumers are affected" by Hi–Tech's alleged failure to meet all of its performance obligations under the contract. Def. Mem. at 16. However, the California consumers are not parties to this action. Concededly, if these unspecified California consumers were to sue Hi–Tech, California might be a more appropriate forum than Massachusetts. However, this is not the issue before me.

Champion's interest in the third gestalt factor—convenient and effective relief—is clearly served in Massachusetts. Champion is a Massachusetts corporation with an interest in vindicating its rights under a contract governed by Massachusetts law. That interest will be most appropriately served by courts in a district with significant experience in resolving Massachusetts contract disputes.

With respect to the fourth gestalt factor, I note that many of the witnesses reside in Massachusetts. The defendant points out

that Champion also has an office in California, *see id.*, but Champion's principal place of business—and the place where payment and billing records are located—is in Massachusetts. Although this may be the gestalt factor weighing most strongly in Hi–Tech's favor, it is still not enough to make the exercise of personal jurisdiction over Hi–Tech unreasonable.

Finally, Hi–Tech's argument that the public policy interests of Massachusetts do not outweigh those of other states because "California, Nevada and Washington State—not Massachusetts—have a legitimate interest in regulating business and resolving disputes stemming from business transacted in those states", *id.* at 17, misses the mark somewhat: this is not a case about the services provided to exhibitors who engaged Hi–Tech in California, Nevada and Washington. Rather, it is about a business agreement with a Massachusetts entity, formed as a result of Hi–Tech's Massachusetts contacts with Champion and governed by Massachusetts law. Thus, Massachusetts clearly has a greater interest in the outcome of this litigation than any other state named by Hi–Tech.

## B. *Improper Venue*

As an alternative to its request to dismiss for lack of personal jurisdiction, Hi–Tech claims that venue is improper in this district and that the case should be transferred to the Northern District of California pursuant to the transfer of venue statute, 28 U.S.C. § 1404(a). Section 1404(a) states:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The First Circuit has recently stated that "[s]ection 1404(a) is a codification of the doctrine of *forum non conveniens.*" *Al-*

*bion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir.1999)[3]. The decision to change venue is in the trial judge's discretion. *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir.2000). "[T]he defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Nowak*, 94 F.3d at 719. The plaintiff's choice of forum will be disturbed only rarely. *See id.*

In this case, Hi–Tech insists that the Northern District of California "is more convenient for the parties than the District of Massachusetts"—a statement belied by the fact that Champion chose to bring this action in Massachusetts for reasons of convenience. Def. Mem. at 18. The statement by Hi–Tech that "many of [Champion's] likely witnesses work" in California, *see id.*, is not borne out by Champion's own statements, which indicate that "a change of venue to California would only cause Hi–Tech's alleged inconvenience to be offset by the inconvenience Champion would face[.]" Pl. Opp. at 19. Hi–Tech's assertion that California would be a more convenient forum, disputed as it is by Champion, does not constitute evidence that judicial efficiency strongly favors litigating in California. I therefore conclude that there is no reason to transfer the venue of this matter.

### III. Conclusion

For the reasons state herein, the defendant's motion to dismiss for lack of personal jurisdiction is DENIED, and the defendant's motion to transfer venue is DENIED.

So ordered.

---

**3.** Traditionally, the application of the judicial doctrine of *forum non conveniens* resulted in a final judgment dismissing the action, *see Nowak*, 94 F.3d at 719, whereas a transfer order under § 1404(a) does not end the case but preserves it as against the running of the statute of limitations and for all other purposes. Hi–Tech does not seek to dismiss this action on the grounds of *forum non conveniens*, but for purposes of analysis, the distinction between cases construing this doctrine—*Nowak*, for instance—and those interpreting § 1404(a) is not important.