**ENERGY CAPITAL AND SERVICES
LP, II, Plaintiff,**

v.

**HILL REFRIGERATION, INC., a/k/a Hill Phoenix, Penpros Land, Inc., and Refrigeration Systems, Inc., Defendants.**

Civil Action No. 97–11393–GAO.

United States District Court,
D. Massachusetts.

Dec. 17, 1997.

---

Christopher W. Parker, Boston, MA, for Plaintiff.

Thomas N. O'Connor, David A. Wilson, Hale & Dorr, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The defendant, Penpros Land, Inc., f/k/a Hill Refrigeration, Inc. (Penpros/Hill), has moved to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the motion is denied.

## BACKGROUND

This case arises out of a contract ("Energy Services Agreement") between the plaintiff, Energy Capital and Services LP, II ("Energy Capital") and defendant Penpros/Hill. Energy Capital is a Massachusetts partnership with a principal place of business in Lowell, Massachusetts. Penpros/Hill is a Delaware Corporation which currently conducts no substantial business. However, during the formation and performance of the Energy Services Agreement, the company's principal places of business were New Jersey and Illinois. The agreement itself was negotiated between representatives of Hill and Energy Capital primarily in New Jersey, was executed in New Jersey, and contains a New Jersey choice-of-law provision. (Franklin Aff. ¶ 3.) The performance of the contract was to take place in New Jersey, where Energy Capital was to install energy conservation equipment and provide services on that equipment at a facility located in Trenton, New Jersey. (Franklin Aff. ¶ 4.) The term of the Energy Services Agreement was ten years. Energy Capital installed the equipment and performed services on that equipment from 1992 until January 1996.

From the inception of the Energy Services Agreement through January 1996, Penpros/Hill paid the amounts due under the contract on a monthly basis in Massachusetts. Throughout this period representatives of Penpros/Hill were in regular contact with representatives of Energy Capital in Massachusetts regarding the performance and administration of the agreement, the parties' respective obligations under the agreement, the payments of amounts due and owing, and maintenance of the energy services equipment. (Aronson Aff. ¶ 4.) Energy Capital proffers evidence that Penpros/Hill "routinely directed inquiries, sometimes on a daily basis," to Energy Capital's offices in Lowell, Massachusetts. (Aronson Aff. ¶ 9.)

Pursuant to a related agreement, the parties established an escrow account with Shawmut Bank in Worcester, Massachusetts. The escrow agreement provides that Energy Capital will pay into the escrow account a 10% rebate of the aggregate savings shown on a monthly report, prepared according to the original Energy Services Agreement. Penpros/Hill paid the fees associated with

the account, and is entitled to payments from this account. (Aronson Aff. ¶ 15.)

After the facility in Trenton was sold to a third party, Energy Capital initiated this action for breach of contract.

## DISCUSSION

■ The exercise of specific personal jurisdiction over Penpros/Hill is proper if Energy Capital can satisfy two conditions: First, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with requirements of the United States Constitution. *See, e.g., Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 204 (1st Cir.1994).

■ The Massachusetts long-arm statute provides that "[a] court may exercise personal jurisdiction over a person . . . arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. L. ch. 223A, § 3(a) (1996). A defendant need not be physically present in a state to "transact business" in the state. *See, Good Hope Indus. v. Ryder Scott Co.,* 378 Mass. 1, 389 N.E.2d 76, 82 (1979); *Buctouche Fish Market, Ltd. v. City Sea Foods, Inc.,* 735 F.Supp. 441, 442 (D.Mass.1990). However, the mere fact that a company in Massachusetts executes a contract with an entity in another state does not automatically mean that the foreign state "transacted business" within the meaning of the statute. *The Ivey Companies v. Enterprise Care Facilities,* No. 96–10749–GAO, slip. op. at 6 (D.Mass. Jan. 17, 1997). *See also, A–Connoisseur Transp. Corp. v. Celebrity Coach, Inc.,* 742 F.Supp. 39, 43 (D.Mass.1990) (citing *Ganis Corp. of Cal. v. Jackson,* 822 F.2d 194, 197 (1st Cir. 1987).)

■ When a claim arises from a breach of contract, a finding of jurisdiction under this provision requires an "evaluation of the relations between the parties, their respective activities under the contract, and the linkages, if any, between the defendant's participation in the transaction and Commonwealth of Massachusetts." *Telco Communications, Inc. v. New Jersey State Firemen's Mut.*

*Benevolent Ass'n,* 41 Mass.App.Ct. 225, 669 N.E.2d 781, 784 (1996). The court must "look at all of the communications and transactions between the parties, before, during and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone." *Ganis Corp.,* 822 F.2d at 197–98.

■ Here, the parties entered into a contract that contemplated a ten-year relationship. Throughout the first four years of the performance of the contract, defendants routinely directed communications into Massachusetts. In addition, the parties set up an escrow account in a bank in Massachusetts. The existence of the bank account and the purposeful direction of communications into Massachusetts are sufficient to amount to "transacting business" within the meaning of the statute. *See, e.g., Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 389 N.E.2d 76 (1979) (where foreign corporation sent periodic appraisal reports to Massachusetts, frequently initiated telephone communications to Massachusetts, mailed monthly invoices to Massachusetts and regularly accepted payment by check from Massachusetts bank account, such activity was sufficient to constitute "transacting business" within the meaning of the Massachusetts long-arm statute).

■ This activity is also sufficient to constitute constitutionally acceptable "minimum contacts." *See World–Wide Volkswagen v. Woodson,* 100 S.Ct. 559, 444 U.S. 286, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The contract between Energy Capital and Penpros/Hill created " 'continuing obligations' between [the defendant] and residents of the forum," such that the defendant "purposefully availed" itself of the opportunity of doing business in Massachusetts. *Burger King v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)

Once a defendant has been found to have made "minimum contacts" and to have purposefully directed himself towards the forum state, exercise of personal jurisdiction will be

constitutionally permissible unless the defendant presents a "compelling case" that the exercise of personal jurisdiction will offend notions of "fair play and substantial justice." *See Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85; *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160. Defendants have offered no such proof, and, especially considering that the defendant is no longer an on-going business in any forum, adjudication of the dispute here is as fair as it would be anywhere.

## CONCLUSION

For the foregoing reasons, defendants motion to dismiss for lack of jurisdiction is DENIED.

SO ORDERED