USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 97-1387 LYLE RICHARDS INTERNATIONAL, LTD., Plaintiff, Appellant, v. ASHWORTH, INC., Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. George A. O'Toole, Jr., U.S. District Judge] ___________________  ____________________ Before Stahl, Circuit Judge, _____________ Godbold* and Cyr, Senior Circuit Judges. _____________________  ____________________ Michael J. Traft, with whom Carney & Bassil was on brief for ________________ _______________ appellant. Toni G. Wolfman, with whom Foley, Hoag & Eliot LLP was on brief _______________ _______________________ for appellee.  ____________________ December 22, 1997  ____________________  ____________________ *Of the Eleventh Circuit, sitting by designation. CYR, Senior Circuit Judge. Plaintiff Lyle Richards CYR, Senior Circuit Judge. _____________________ International, Ltd., a Massachusetts corporation, appeals from a district court judgment dismissing its contract action against Ashworth, Inc., a Delaware corporation with its principal place of business in California. We affirm.  I I BACKGROUND BACKGROUND __________ In March 1994, Ashworth hired a former Lyle employee, Andrew Tarlow, to direct its new golf shoewear operations in California. Shortly thereafter, without direct or indirect solicitation from Ashworth, Lyle made overtures, through Tarlow, to serve as Ashworth's purchasing agent. Over the next two months, Lyle and Ashworth discussed the matter by phone and at meetings in California and China. At no time did Ashworth advertise for or solicit a purchasing agent in Massachusetts. Not later than July 1994, Ashworth, through Tarlow, proposed entering into a formal written agreement with Lyle. In due course, the Agreement, drafted and signed by Lyle in Massachusetts, was mailed to California, where Ashworth executed it on August 5. The Agreement designated Lyle as Ashworth's purchasing agent for footwear manufactured in China and Taiwan, but required Ashworth to undertake no specific contractual responsibilities in Massachusetts. Thereafter, Ashworth periodically forwarded purchase orders to Lyle in Massachusetts, which Lyle transmitted to the appropriate Chinese or Taiwanese factory. Ashworth communicated 2 with Lyle in Massachusetts two or three times a week regarding ongoing contract performance, and from time to time placed orders with shoe-component suppliers which were instructed to bill Lyle directly. In addition, during the term of the Agreement an Ashworth representative attended three trade shows in Massachusetts, accompanied on two occasions by a Lyle employee. The Agreement prescribed a one-year term. Absent written notice of termination from either party at least ninety days prior to its anniversary date, the Agreement renewed itself automatically. In August 1995, Ashworth provided written notice of termination to Lyle, dated April 19, 1995. Thereafter, Lyle filed suit against Ashworth in a Massachusetts superior court, alleging breach of contract and unfair trade practices under Mass. Gen. Laws ch. 93A, 2, 11, claiming that the termination notice had been back-dated to April 1995 to conceal its untimeliness under the Agreement. Following its removal, see 28 U.S.C. 1332(a) & 1441(a), and a ___ nonevidentiary hearing, the action was dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). II II DISCUSSION1 DISCUSSION __________  ____________________ 1We review de novo. Nowak v. Tak How Invs., Ltd., 94 F.3d __ ____ _____ ____________________ 708, 712 (1st Cir. 1996), cert. denied, 117 S. Ct. 1333 (1997). _____ ______ Since the district court resolved the jurisdictional issue without an evidentiary hearing, "we draw the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable 3 A. The Breach of Contract Claim A. The Breach of Contract Claim ____________________________ In a diversity case, personal jurisdiction over a nonresident defendant is constrained both by the long-arm statute of the forum state and the Due Process Clause of the Fourteenth Amendment. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d ___ ____________________________ ______ 201, 204 (1st Cir. 1994). Massachusetts law permits Commonwealth courts to assert jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this ___________ ___ ________ __ ____ commonwealth . . . ." Mass. Gen. Laws ch. 223A, 3(a) (emphasis ____________ added). The "transacting business" test under section 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party, see, e.g., Good Hope Indus., Inc. v. Ryder Scott Co., 389 N.E.2d ___ ____ _______________________ _______________ 76, 82 (Mass. 1979), with a view to determining whether "'the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable . . . .'" Id. (quoting ___ Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 496 (5th Cir. ________________________ ________ 1974)). Often, the "transacting business" test is importantly informed by ascertaining whether the nonresident party initiated or solicited the business transaction in Massachusetts. For instance, the Massachusetts Supreme Judicial Court ("SJC") has held that a California corporation transacted business in  ____________________ to plaintiff[,]" but without crediting "conclusory allegations or draw[ing] farfetched inferences." Ticketmaster-New York, Inc. v. ___________________________ Alioto, 26 F.3d 201, 203 (1st Cir. 1994). ______ 4 Massachusetts by systematically advertising its California hotel in Massachusetts. See Tatro v. Manor Care, Inc., 625 N.E.2d 549, ___ _____ ________________ 551-52 (Mass. 1994); see also Hahn v. Vermont Law Sch., 698 F.2d ___ ____ ____ ________________ 48, 51 (1st Cir. 1983) (nonresident law school transacted business by sending application for admission and notice of acceptance to plaintiff in Massachusetts); New Hampshire Ins. ___________________ Guar. Ass'n v. Markem Corp., 676 N.E.2d 809, 812-13 (Mass. 1997) ___________ ____________ (nonresident insured did not transact business by mailing premium payments to Massachusetts, since Massachusetts-based insurer solicited insurance business in New Hampshire). An Ashworth affidavit attesting that Lyle had proposed, in March 1994, to serve as Ashworth's purchasing agent _____ ____ went unopposed by Lyle. Instead, Lyle relied upon the inapposite fact that it was Ashworth which suggested, during the summer of 1994, that the precise terms of the business ______ __ ____ relationship previously proposed by Lyle be reduced to writing. __________ Although any effect a nonresident defendant's activity may have had upon commerce in Massachusetts is also to be considered in determining whether it transacted business in the Commonwealth, see Droukas v. Divers Training Academy, Inc., 376 ___ _______ ______________________________ N.E.2d 548, 551 n.5 (Mass. 1978), the purely incidental contacts involved here were insufficient to support an assertion of personal jurisdiction over Ashworth. See, e.g., Whittaker Corp. ___ ____ _______________ v. United Aircraft Corp., 482 F.2d 1079, 1085 (1st Cir. 1973) ______________________ (finding defendant's contacts with Massachusetts insufficient, and thus no personal jurisdiction, where there was "no 5 requirement in any of the agreements that performance take place ___________ in Massachusetts") (emphasis added); New Hampshire Ins. Guar. _________________________ Ass'n v. Markem Corp., 676 N.E.2d 809, 812 (Mass. 1997) ("That _____ ____________ [plaintiff] then decided to conduct some administration . . . in ____ Massachusetts . . . cannot be the basis for personal jurisdiction against [defendant] where [defendant] reasonably assumed it would be doing business with [plaintiff] in New Hampshire and did in fact conduct most of its business . . . there.") (emphasis ____ added). See also Nichols Assocs., Inc. v. Starr, 341 N.E.2d 909, ___ ____ _____________________ _____ 912 (Mass. App. Ct. 1976) (no significant involvement in commerce of Massachusetts, and thus no personal jurisdiction, where nonresident defendant's "contact [was] limited to the . . . acceptance of services which the plaintiff simply chose to _____ perform in Massachusetts.") (emphasis added). For one thing, most performance required from Lyle under the Agreement was to be rendered outside Massachusetts. _______ The Agreement did not even require that the internal administrative functions actually conducted by Lyle in Massachusetts be performed there, such as arranging for merchandise shipments from the Chinese-Taiwanese suppliers to Ashworth in California, receiving price quotes or product samples from the Asian factories, or reporting to Ashworth on market conditions and the availability of merchandise. Nor does the Agreement indicate that Lyle either needed or intended to perform its "quality control" responsibilities in Massachusetts. Rather, most of its core contractual 6 responsibilities relating to the inspection of merchandise would have had to have been performed in China or Taiwan, rather than Massachusetts. Thus, its performance of various attendant chores in Massachusetts was incidental to the formation of the Agreement. See Nichols Assocs., Inc., 341 N.E.2d at 912.2 ___ _____________________ Finally, Lyle notes, Ashworth attended three trade shows in Massachusetts, accompanied by a Lyle employee on at least two occasions, and Lyle performed two contract functions in  Massachusetts: designing golf shoes and purchasing various golf- shoe components and the materials with which to package them for shipment to Asia. Nevertheless, as these initiatives were undertaken unilaterally by the respective parties, even though neither was responsible for their performance under the Agreement, this attempt to assert personal jurisdiction over Ashworth is unavailing since chapter 223A requires that the cause of action have "aris[en] from [Ashworth's] . . . transacting any ________ ____ __________ business in [Massachusetts] . . . ." Mass. Gen. Laws ch. 223A,  3(a) (emphasis added). We explain briefly. The "arising from" clause in chapter 223A is to be generously construed in favor of asserting personal jurisdiction,  ____________________ 2The contention that Ashworth transacted business in Massachusetts by mailing its termination notice to Lyle in Massachusetts is flawed as well, since Ashworth cannot have solicited business by terminating the business relationship. Nor _________ ___________ was the Agreement executed by Ashworth in Massachusetts, see ___ Carlson Corp. v. University of Vermont, 402 N.E.2d 483, 485 ______________ ______________________ (Mass. 1980) (defendant transacted business in Massachusetts, where it signed the contract), but in California where it had been forwarded after having been executed by Lyle in Massachusetts, supra p. 2. _____ 7 by applying the following "but for" causation test: Did the defendant's contacts with the Commonwealth constitute "the first step in a train of events that result[ed] in the personal injury." Tatro, 625 N.E.2d at 553. The plaintiff in Tatro _____ _____ almost certainly would not have selected the defendant's California hotel but for the advertisements the defendant had ___ ___ placed in various Massachusetts media. Lyle, on the other hand, does not contend that component purchases, shoe design, or attendance at trade shows comprised any part of the responsibilities of either party under the Agreement.  Since the extra-contractual activities unilaterally undertaken by the respective parties in Massachusetts were extraneous to the formation of the Agreement, see Hahn v. Vermont ___ ____ _______ Law Sch., 698 F.2d 48, 51 (1st Cir. 1983) (holding, pre-Tatro: ________ _____ "we have no doubt that [the 'arising from' requirement] has been satisfied when the cause of action is for an alleged breach of contract and the business transacted was instrumental in the ____________ __ ___ formation of the contract.") (emphasis added), those activities _________ __ ___ ________ did not constitute a "but for" cause for the alleged breach of contract, see Tatro, 625 N.E. 2d at 553. ___ _____ B. The Unfair Trade Practices B. The Unfair Trade Practices __________________________ Claim Under Chapter 93A Claim Under Chapter 93A _______________________ Finally, Lyle contends, since Chapter 223A grants jurisdiction over "a cause of action . . . arising from [a defendant's] . . . causing tortious injury by an act or omission in [Massachusetts] . . . [,]" Mass. Gen. Laws ch. 223A, 3(c), the federal district court possessed personal jurisdiction over 8 Ashworth in relation to the unfair trade practices claim under Mass. Gen. Laws ch. 93A. For present purposes we shall assume, without deciding, that a Chapter 93A violation would constitute a "tortious injury" under Chapter 223A. Cf. Burtner v. Burnham, ___ _______ _______ 430 N.E.2d 1233, 1237 (Mass. App. Ct. 1982) ("Whether a violation of . . . chapter [93A] constitutes a 'tortious injury' within the meaning of c. 223A, 3(c) may be open to some doubt."). Lyle alleges that Ashworth attempted to conceal the tardiness of its nonrenewal notice by backdating its untimely termination letter to Lyle, see supra p. 3, and that the alleged ___ _____ deception was designed to prevent Lyle from pursuing a contract action for wrongful termination of the Agreement. Assuming as much, we nonetheless conclude that Lyle cannot prevail on its Chapter 93A claim. Chapter 93A, section 11, provides that "[a]ny person who engages in the conduct of any trade or commerce and who ___ ___ suffers any loss of money or property, real or personal, as a _______ ___ ____ __ _____ __ ________ result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . . . may . . . bring an action in the superior court . . . ." (emphasis added). Thus, in order to state a chapter 93A claim, Lyle was required to demonstrate a loss of money or property. Yet it alleged no such loss. Instead, it asserted a breach of contract by virtue of Ashworth's failure to provide timely notice of termination as required by the Agreement. In addition, Lyle alleged that 9 Ashworth violated chapter 93A by engaging in the deceptive act of backdating the notice of termination. As to the latter allegation, however, Lyle claimed no injury apart from that ______ caused by the alleged breach of contract. Consequently, Lyle failed to allege a "loss of money or property . . . as a result of [Ashworth's] use or employment . . . of [a] . . . deceptive act . . . [,]" as required by chapter 93A, section 11. Finally, a breach-of-contract claim, without more, cannot be converted into a tort claim. See Redgrave v. Boston Symphony Orchestra, ___ ________ ___________________________ Inc., 557 F. Supp. 230, 238 (D. Mass. 1983). ____ Affirmed. ________ 10