**WORKGROUP TECHNOLOGY CORPORATION, Plaintiff,**

v.

**MGM GRAND HOTEL, LLC., Defendant.**

**No. CIV.A. 02–10632–RBC [1].**

United States District Court, D. Massachusetts.

Feb. 27, 2003.

1. On October 2, 2002, Judge Wolf reassigned this case to the undersigned United States Magistrate Judge for all purposes, pursuant to 28 U.S.C. § 636(c).

Gary M. Feldman, Davis, Malm & D'Agostine, P.C., Boston, MA, for Workgroup Technology Corporation, Plaintiff.

Daniel H Conroy, Schnader Harrison Goldstein & Manello, Boston, MA, for MGM Grand Hotel, L.L dba MGM Grand Hotel and Casino, Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER CASE (# 4)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On February 26, 2002, the plaintiff, Workgroup Technology Corporation ("plaintiff" or "WTC"), filed a complaint against the defendant, MGM Grand Hotel, LLC, ("defendant" or "MGM") in Massachusetts Superior Court. (Amended Complaint and Jury Demand (from State Court Record), # 3). The case was removed by the defendant to the United States District Court for the District of Massachusetts on April 4, 2002. (Notice of Removal, # 1). WTC. is a Delaware corporation with its principal place of business in Massachusetts. (# 3, ¶ 1). MGM is a Nevada limited liability company with its principal place of business in Nevada. (Defendant's Motion to Dismiss or Transfer Case # 4, Ex. A ¶ 2). WTC and MGM entered into a contract by which the parties agreed that WTC would hold its annual conference at the MGM Grand Hotel the week of October 19–24, 2001. (# 3, ¶ 8). In light of the events of September 11th, WTC decided to cancel the conference and informed MGM of its decision on September 13, 2001. (# 3,

¶ 13). The basis of the plaintiff's case is that MGM, through its employees, led WTC to believe that its deposit, minus any out of pocket costs, would be returned and that MGM would not seek further payment in accordance with the contract. (# 3, ¶¶ 14, 16).

Following closely on the heels of the complaint filed in Massachusetts by WTC, MGM initiated a suit against WTC in Nevada on March 4, 2001. (Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss or Transfer Case, # 16 at 1, Ex. 1 at 2). Pursuant to the "first to file" rule, the Nevada Court ordered that MGM's action be stayed pending a resolution of the jurisdictional issues by this Court. (# 16, Ex. 1 at 6).

On April 12, 2002, MGM filed a Motion to Dismiss or Transfer Case (# 4) and a Memorandum of Law in Support of Defendant's Motion to Dismiss or Transfer Case (# 5). MGM claims that this Court lacks personal jurisdiction as the facts of this case do not satisfy either the Massachusetts long-arm statute or the Constitutional Due Process requirements. MGM argues, alternatively, that the case should be dismissed on grounds of forum non conveniens or transferred to the District of Nevada pursuant to 28 U.S.C. § 1404. (# 5, at 1).[2] WTC filed a Memorandum of Law in Opposition to Defendant's Motion to Dismiss or Transfer Case (# 8) on May 10, 2002, along with affidavits of Patrick Kareiva (# 9), Crissy Bardani (# 10) and Phyllis Case (# 11). In its memorandum in opposition, the plaintiff argues: that this Court has personal jurisdiction over the defendant; that there are no grounds for dismissal based on the doctrine of forum

non conveniens; and, that it would not be proper to transfer the case pursuant to 28 U.S.C. § 1404(a). (# 8, at 1).

The case was reassigned to the undersigned on October 2, 2002. For the reasons discussed below, I find that this Court does have jurisdiction over the defendant and that neither dismissal based on forum non conveniens nor transfer pursuant to 28 U.S.C. § 1404(a) is appropriate.

## II. Facts

In the winter of 2000, WTC began to plan its annual conference. (# 10, ¶ 7). Attendees of prior conferences were asked where they would like to hold the conference in 2001 and it was determined that it should be in Las Vegas, Nevada. (Id.). A WTC representative searched for suitable venues while she was in Las Vegas and obtained information on several hotels which she brought back to Massachusetts. (Id. at ¶ 8). WTC's Director of Marketing, Crissy Bardani ("Bardani"), initiated telephone calls to several hotels, including MGM, and arranged to visit them on January 16, 2001. (Id. at ¶ 9). Several telephone calls and messages followed, some initiated by WTC in Massachusetts, others by MGM representatives in Nevada. (# 8, at 2).

Over a three month period, WTC and MGM negotiated the terms of the agreement with respect to the conference room rental fees, food and beverages. (# 8 at 3). MGM faxed a proposed contract to Bardani in Massachusetts on March 7, 2001; an emailed and faxed copy of the revised contract followed on March 15th. (# 8 at 3). On March 26th, Bardani signed the contract on behalf of WTC in Massachusetts

---

**2.** MGM also alludes in the introduction of its Motion to Dismiss or Transfer (# 4) to a claim that the case should be dismissed for improper venue, Fed.R.Civ.P. 12(b)(3). However, the defendant did not make a single argument in support of this claim. Thus, the Court will not address such an argument. MGM also moved to dismiss Count IV for failure to state a claim upon which relief can be granted. This 12(b)(6) motion is addressed, infra.

and proceeded to mail and fax the signed copies to MGM. (Id. at 3). On March 29th, MGM faxed a fully executed copy of the contract to Bardani. (Id.). Thereafter, WTC and MGM had discussions regarding a separate contract for additional catering services for the convention. (Id.). However, it appears that such a contract was never executed. (Id.).

Due to the level of fear and uncertainty following the events of September 11th, WTC decided that attendance at its conference likely would be very low and that the conference should be cancelled. (# 3, ¶ 13). WTC had made this determination by September 13th and discussed cancellation with MGM employees on that day. (# 3, ¶ 14). The plaintiff alleges that two MGM employees, Carolyne Fergesson and Mitch Klock, led WTC to believe that its deposit would be refunded after subtracting any out of pocket expenses and that no mention was made of seeking further payment under the contract. (# 8, at 5). WTC allegedly relied on these reassurances when it announced that the conference was cancelled on September 13, 2001. (Id.). MGM now refuses to refund WTC's $21,000 deposit and is demanding $151,158.30 in liquidated damages in accordance with the unfulfilled contractual agreement. (# 3, ¶¶ 34–35).

### III. Discussion

#### 1. Personal Jurisdiction

#### A. Long–Arm Statute

■■■ This Court must first decide whether or not it has personal jurisdiction over MGM. It is WTC's burden to show that MGM purposefully conducted business in a way that makes it appropriate for this Court to assert personal jurisdiction. "On a motion to ·dismiss for want of in personam jurisdiction, . . . the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 34 (1 Cir., 1998). I must consider, "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim . . . [and] then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Id.* at 34. While this approach gives WTC the benefit of the doubt, this Court is not required to "credit conclusory allegations or draw farfetched inferences." *Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 203 (1 Cir., 1994).

■■■ I must apply Massachusetts law to determine whether exercising personal jurisdiction is appropriate in this case because "federal courts look to state law to determine whether jurisdictional requirements have been met." *Gray v. O'Brien,* 777 F.2d 864, 866 (1 Cir., 1985). WTC, in order to establish personal jurisdiction, has to meet "a twofold burden of demonstrating that the Massachusetts Long Arm Statute, G.L. c. 223A, authorizes jurisdiction over [MGM], and that any such exercise comports with the constraints imposed by the United States Constitution."[3]

---

**3.** There are two types of personal jurisdiction-general and specific. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity . . . in the forum state." *United Elec. Radio and Machine Workers of America v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1 Cir., 1992).(Pleasant St. I). Specific jurisdiction arises when "the cause of action arises directly out of, or relates to, the defendant's forum based contacts." *Id.* at 1088–89. WTC does not argue that general jurisdiction exists; rather it argues that this claim arises out of MGM's business transactions with WTC in Massachusetts. Therefore, I will analyze the

*Noonan v. Winston Co.,* 902 F.Supp. 298, 302 (D.Mass., 1995), aff'd 135 F.3d 85 (1 Cir., 1998). The analysis does not end if the literal requirements of the long-arm statute are met; that is, an assertion of jurisdiction must also fall within the limits of the Constitution. Thus, meeting the conditions of the long-arm statute is a prerequisite to moving on to the constitutional due process considerations.

█ Therefore, I must determine first whether exercising jurisdiction over MGM satisfies the Massachusetts long-arm statute, i.e., whether the claims in this case arise from MGM's business activities in Massachusetts. WTC claims that its cause of action satisfies the first prong of the long-arm statute which states that, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting business in this commonwealth..." Mass.Gen.Laws, c. 223A, § 3(a)[4] (Emphasis added). In looking at the facts of this case, I find that MGM "transacted business" and that such transaction of business gave rise to WTC's claims against MGM such that the Massachusetts long-arm statute is satisfied.

█ In short, this case involves a dispute over the contract between WTC and MGM and alleged misrepresentations made by MGM employees when WTC cancelled the convention. To satisfy the two requirements of § 3(a), WTC must show that 1) MGM transacted business in Massachusetts, and 2) WTC's claim arose from MGM's transaction of such business. *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 767, 625 N.E.2d 549, 551 (1994). WTC claims that MGM transacted business in Massachusetts for purpose of the long-arm statute by negotiating the terms of the contract with WTC, by soliciting from WTC future convention business and information regarding other Massachusetts businesses through representatives physically present in the Commonwealth, and by advertising within the Commonwealth. (# 8 at 7).

█ WTC first alleges that MGM transacted business in Massachusetts for purposes of the long-arm statute by actively negotiating the terms of the contract with WTC. (# 8 at 8, Bardani Aff. at ¶¶ 12–25). WTC points specifically to at least four telephone calls, five emails, and three faxes sent by MGM to WTC in Massachusetts over a three month period that culminated in the consummation of the contract between the two parties. (Id.) The "transacting business" clause in § 3(a) has been construed broadly. See *Pleasant Street I,* 960 F.2d at 1086; *Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1 Cir., 1983); *Nova Biomedical Corp. v. Moller,* 629 F.2d 190, 193 (1 Cir., 1980); *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.,* 764 F.2d 928, 931 (1 Cir., 1985). Moreover, the

---

personal jurisdiction issue only in terms of whether specific jurisdiction exists.

4. The Massachusetts long-arm statute sets out in full, that:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does business or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth....

Mass.Gen.Laws. c. 223A, § 3(a). The transacting business prong of c. 223A is the only one that arguably applies in this case.

defendant need not be physically present in a state to "transact business" in the state. *Energy Capital and Services LP, II v. Hill Refrigeration, Inc.,* 989 F.Supp. 353, 355 (D.Mass., 1997).

■ Moreover, even just a few acts on a defendant's part can often suffice to satisfy the long-arm statute's threshold for transacting business. See *Bond,* 764 F.2d at 931 (First Circuit held that mailing four letters and receiving at least one telephone call from plaintiff in Massachusetts in the course of negotiating a guaranty satisfied the transacting business requirement of § 3(a)); *Hahn,* 698 F.2d at 50 (First Circuit held that the actions of defendant in mailing to plaintiff in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachusetts long-arm statute); *Nova Biomedical,* 629 F.2d at 195 (First Circuit held that defendant's mailing two letters to plaintiff in Massachusetts demanding that it cease and desist from infringing the defendant's patent constituted transacting business for purposes of the long-arm statute).

■ In disputing that personal jurisdiction exists here, MGM contends that WTC initiated contact with MGM; that the contract in dispute, although executed by WTC in Massachusetts, was executed by MGM in Nevada; and finally that any communication sent by MGM was sent at WTC's request. (# 5 at 10). MGM is correct in asserting that a defendant's negotiating or signing a contract in Massachusetts constitutes transacting of business for purposes of § 3(a). *See Carlson Corp. v. University of Vermont,* 380 Mass. 102, 105, 402 N.E.2d 483, 485 (1980)(Defendant signed contract while physically present in Massachusetts). However, "the mere fact that a company in Massachusetts executes a contract with an entity in another state

does not automatically mean that the foreign [entity] 'transacted business' within the meaning of the statute." *Energy Capital,* 989 F.Supp. at 354.

The facts in the instant case show that WTC did initiate contact with MGM and that MGM was never physically present in the Commonwealth to either negotiate or sign the contract. However, the First Circuit has held that even in cases where a Massachusetts plaintiff initiated the communications culminating in the contract, the transacting business requirement could still be satisfied. See *Hahn,* 698 F.2d at 50 (Massachusetts plaintiff contacted defendant law school for application information). Construing the transacting business requirement broadly, as I must, I find that MGM's telephone calls, emails, and faxes to WTC in Massachusetts for the purpose of negotiating the terms of the contract whereby MGM would obtain convention business from WTC are sufficient to satisfy the "transacting business" requirement of Mass.Gen.Laws, c. 223A, § 3(a).

MGM, however, cites to the First Circuit's decision in *Lyle Richards, Int'l, Ltd. v. Ashworth, Inc.,* 132 F.3d 111 (1 Cir., 1997), in an apparent attempt to argue that its ongoing communication with WTC in Massachusetts does not rise to the level sufficient to satisfy the "transaction of business" requirement of § 3(a). In *Lyle,* the plaintiff initially contacted the defendant and eventually the plaintiff and the defendant entered into an agreement that was drafted and signed by the plaintiff in Massachusetts and signed by the defendant in California; all negotiations leading up to the contract took place outside of Massachusetts and contract performance was to take place outside of Massachusetts. *Lyle,* 132 F.3d at 112. After the agreement was executed, the defendant communicated with the plaintiff in Massachusetts weekly regarding contract perfor-

mance. *Id.* The plaintiff ultimately sued the defendant alleging inter alia breach of contract, claiming that the termination notice had been backdated to conceal its untimeliness under the contract. *Lyle,* 132 F.3d at 112. Despite the defendant's regular communication with the plaintiff in Massachusetts, the First Circuit nevertheless found that the defendant's contacts with Massachusetts were "purely incidental...insufficient to support an assertion of personal jurisdiction" over the defendant. *Id.* at 113.

The *Lyle* case appears to put a new gloss on the First Circuit's generous interpretation of the "transaction of business" requirement. In cases decided earlier than *Lyle,* the First Circuit consistently held that a defendant need only "reach" into Massachusetts by way of telephone, facsimile or e-mail once or twice to satisfy the transaction of business requirement of § 3(a). *See Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978 (1 Cir., 1986), (holding that the sending of one telex to plaintiff in Massachusetts satisfies the "transacting any business" requirement of § 3(a)); *Bond,* 764 F.2d at 931 (mailing four letters and receiving one telephone call from plaintiff in Massachusetts in the course of negotiating a guaranty satisfied the transacting business requirement of § 3(a)); *Hahn,* 698 F.2d at 50 (holding that the defendant's mailing to plaintiff in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachu-

setts long-arm statute); *Nova Biomedical,* 629 F.2d at 195 (defendant's mailing two letters to plaintiff in Massachusetts demanding that it cease and desist from infringing the defendant's patent constituted transacting business for purposes of the long-arm statute). The *Lyle* case seems to suggest that a court, in determining whether a defendant "transacted business" for purposes of the long-arm statute, must consider the nature of the defendant's contacts with Massachusetts-that is, the contacts with Massachusetts must have been instrumental (not incidental) in the formation of the contract in dispute. In *Lyle,* the court ultimately refused to find that it could exercise personal jurisdiction over the defendant because the defendant's "performance of various attendant chores in Massachusetts was incidental to the formation of the" contract. *Lyle,* 132 F.3d at 113.[5]

The parallels between *Lyle* and the case at bar are obvious: MGM was first approached by WTC; any communication sent by MGM to WTC in Massachusetts was at WTC's request; the contract was signed by WTC in Massachusetts and MGM in Nevada; and finally, the contract was to be performed entirely in Nevada. However, there is a vital difference between the two cases. In the instant case, MGM's telephone calls, emails, and faxes to WTC in Massachusetts cannot be viewed as purely incidental (like the contacts in *Lyle*)-indeed, MGM's contacts with Massachusetts were crucial to the formation of the contract in dispute. Thus, the

---

**5.** Perhaps the *Lyle* court meant that for purposes of the "transaction of business" requirement in a breach of contract case, a Court cannot consider communications between plaintiff and defendant after execution of the contract. Or, alternatively, perhaps the *Lyle* court was combining a consideration of the "transaction of business" requirement and the "arising from" requirement in § 3(a)

and applying a form of the "but for" test (discussed at p. 112, infra)-that is, a defendant's contacts with the forum state must be more than merely incidental, such that the contract would not have existed "but for" those contacts. In any event, as discussed infra, the *Lyle* case is distinguishable on the facts from the instant case.

*Lyle* case does not alter the ultimate conclusion that MGM transacted business in Massachusetts.

 Although Courts construe the "transacting business" clause in § 3(a) broadly, WTC must still show a rational nexus between MGM's transaction of business in Massachusetts and WTC's injury as provided for by § 3(a). *Merced v. JLG Industries, Inc.,* 170 F.Supp.2d 65, 70 (D.Mass., 2001). Thus, WTC must establish that its cause of action arose from MGM's transacting business in Massachusetts. The "arising from" clause in Mass. Gen.Laws, c. 223A is to be generously construed in favor of asserting personal jurisdiction, by applying a "but for" causation test. *Tatro,* 416 Mass. at 771–72, 625 N.E.2d at 554. Based on the record, I find that MGM's contacts with Massachusetts played a material role in the formation and ultimately the consummation of the contract that gave rise to WTC's cause of action. (# 8 at 2, Bardani Aff. at ¶¶ 7–25). That is to say, the contract in dispute would never have come to exist "but for" the telephone calls, emails, and faxes between WTC and MGM. Thus, I find that WTC's claim arose from MGM's transaction of business in Massachusetts.[6]

In sum, I find that the requirements of the Massachusetts long-arm statute have been met. I will now turn to the constitutional analysis to determine whether exercising jurisdiction over MGM comports with due process.

### B. Due Process

 The Due Process clause of the Fourteenth Amendment allows a Court to exercise personal jurisdiction over a nonresident defendant only if the defendant has sufficient "minimum contacts" with the forum state such that maintenance of the suit will not offend traditional notions of fair play. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The First Circuit follows a tripartite analysis for determining whether the exercise of personal jurisdiction comports with due process. First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Pritzker v. Yari,* 42 F.3d 53, 60 (1 Cir., 1994), cert. denied, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995) (quoting *Pleasant St. I,* 960 F.2d at 1088). A careful application of the three elements to the facts of this case demonstrates that the exercise of personal

---

6. WTC also alleges that MGM transacted business in Massachusetts by its further communication with WTC regarding a separate contract, MGM's alleged solicitation from WTC of future convention business and information regarding other Massachusetts business by MGM representatives while physically present in Massachusetts and MGM's advertising activities in Massachusetts. (# 8 at 8). Based on the record, the exchange of communication regarding the separate, but unexecuted, contract and the alleged solicitation of future convention business occurred after the contract in dispute was fully executed. (Id.). While the exchange of communication regarding a separate contract, the alleged solicitation of future convention business, and the defendant's advertising activities in Massachusetts might be considered "transaction of business", such activities did not play an instrumental role in the formation of the contract in dispute. Put another way, such activities by MGM did not give rise to the instant dispute. Thus, these allegations do not satisfy the "arising from" requirement of the long-arm statute.

jurisdiction over MGM does not offend constitutional principles.

■■■■■ The first consideration under the three part analysis is whether WTC's claim arises out of, or relates to, MGM's in-forum activities. The relatedness test is a "flexible, relaxed standard." *Pritzker*, 42 F.3d at 60. However, the relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state. *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1 Cir., 1995). Courts have found that participating in significant negotiations within the forum state anent important contract terms can constitute minimum contacts with the state for purpose of subsequent claim asserting breach of that contract. *Pleasant St. I*, 960 F.2d at 1089.

■■■■ Moreover, a defendant's lack of physical presence in Massachusetts is not fatal to the case for jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("Jurisdiction... may not be avoided merely because the defendant did not physically enter the forum State."); *Pritzker*, 42 F.3d at 62 ("a non-resident defendant may not always be able to elude the net by such simple expedients as remaining physically outside the forum"). When physical presence is lacking, the Court looks for some other indication that the defendant reached into the forum, such as mail or telephone contacts. See *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. See also *Sawtelle*, 70 F.3d at 1389–90 (Stating that the transmission of information into the forum state by way of telephone call or mail in malpractice case were "unquestionably a contact for purposes of our analysis").

Here, MGM's four telephone calls, five emails, and three faxes to WTC in Massachusetts for the purpose of negotiating the terms of the contract were unquestionably jurisdictional contacts for purpose of the constitutional analysis. Further, these telephone calls, emails and faxes were related contacts because they were instrumental in the formation of the contract in dispute in this litigation. See *Hahn*, 698 F.2d at 51. See also *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 290 (1 Cir., 1999) (Stating that a defendant's contact with the forum is related for purposes of a contract claim when the contact is "instrumental either in the formation of the contract or in its breach"). *Compare United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 622 (1 Cir., 2001)(Stating that defendant's letter to the Massachusetts court was a jurisdictional contact, but that the letter was not a related contact for purposes of the government's claim because the letter was not essential to either the formation or breach of the alleged contract between SAB and the government).

MGM argues that its contacts with Massachusetts were tangential at best and did not rise to the level necessary to subject it to the jurisdiction of this Court. (# 5 at 9). Nonetheless, the facts reflect that MGM directed four telephone calls, five emails, and three faxes into Massachusetts before the contract for rooms was consummated. As stated previously, these contacts were instrumental in the formation of the contract. Thus, WTC's claim arises directly out of MGM's contacts with Massachusetts.

■■■■ I must now consider whether MGM's contacts with Massachusetts represented a purposeful availment by MGM of the privilege of conducting business in this State. "The function of the purposeful availment requirement is to assure that

personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Sawtelle*, 70 F.3d at 1390. This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts. See *Phillips Exeter*, 196 F.3d at 292. The two focal points are voluntariness and foreseeability. *Ticketmaster*, 26 F.3d at 207–208. The defendant's contacts with the forum state must be voluntary-that is, not based on the unilateral actions of another party or a third person. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Further, the defendant's contacts with the forum state must be such that he should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Finally, the Court may look at all of the communications and transactions between the parties, before, during, and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone. *Ganis Corp. of Cal. v. Jackson*, 822 F.2d 194, 197 (1 Cir., 1987) (relying on *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174).

MGM contends that it has not purposefully availed itself of this forum because it does business in Nevada, that it does not own property, conduct business, maintain an office, or have any employees or bank accounts within Massachusetts. (# 5 at 10). While it is undisputed that MGM has no physical presence in Massachusetts, MGM nonetheless acted in a manner that makes it foreseeable that it could be haled into Court here. A review of the totality of MGM's contacts with Massachusetts reflects that MGM purposefully availed itself of the benefits and protections of Massachusetts law.

As discussed earlier, MGM directed at least four telephone calls, five emails, and three faxes into Massachusetts for the purpose of negotiating and consummating the contract for rooms. (# 8 at 8, Bardani Aff. at ¶¶ 12–25). Following the execution of the contract for rooms, MGM continued to exchange extensive communication with WTC in Massachusetts regarding a separate contract for additional services to be provided by MGM. (# 8 at 4, Bardani Aff. at ¶¶ 26–34). During the course of negotiating the terms of the separate contract, MGM directed proposals for entertainment and catering options to WTC in Massachusetts via email and fax. (Id.). According to WTC, MGM while physically present in the Commonwealth also solicited future convention business from WTC as well as requested information regarding other Massachusetts businesses. (Id.). In addition to maintaining a website, MGM had advertisements in publications that circulated in Massachusetts. (# 8 at 8). MGM's actions during contract negotiations with WTC do not amount to the kind of unilateral action that makes MGM's forum-state contacts involuntary. Moreover, MGM's other contacts with Massachusetts revealed an even more substantial attempt by MGM purposefully to avail itself of the privilege of conducting business activities in this state. Based on the facts, exercising personal jurisdiction is appropriate because MGM purposefully derived economic benefits from its forum-state activities. *Pritzker*, 42 F.3d at 61–62 (citing *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174).

I turn now to consideration of the Gestalt factors: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's

interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Pleasant St. I,* 960 F.2d at 1088.

With regards to the first factor, it would undoubtedly be burdensome for MGM to defend itself in Massachusetts as its only place of business is in Nevada. However, it is "almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." *Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 717 (1 Cir., 1996), cert. denied, 520 U.S. 1155, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997). Thus, for this particular Gestalt factor to have any significance, MGM must demonstrate that the exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way. *Pritzker,* 42 F.3d at 64. MGM has not done so.

With regards to the second factor, Massachusetts has an interest in this action because Massachusetts has an interest in adjudicating alleged violations of its consumer protection laws. *United Elec. Workers v. 163 Pleasant St. Corp.* 987 F.2d 39, 46 (1 Cir., 1993)(Pleasant St. II) (Stating that where plaintiffs allege that planned cessation of health care payments after plant closing would violate Commonwealth and federal labor laws, "Massachusetts clearly has a vital interest in seeing bargained-for health insurance benefits provided to its residents.").

The third factor also favors the exercise of jurisdiction by this Court because WTC's choice of forum must be accorded deference. See *Sawtelle,* 70 F.3d at 1395 (Stating that "[t]his court has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."). It is obvious that a Massachusetts forum is more convenient for WTC than another forum, particularly since WTC's principal place of business and its employees who may be called as witnesses are in Massachusetts.

As to the fourth factor, MGM contends that Nevada has a greater interest than Massachusetts in the resolution of this case. There appears to be little or no support for such an argument. The final Gestalt factor addresses the interests of the affected governments in promoting substantive social policies. However, it appears that considerations of social policy are not relevant to this case. Thus, on balance, the Gestalt factors are either neutral or favor plaintiff. Accordingly, the exercise of jurisdiction in Massachusetts will not offend traditional notions of fair play and substantial justice. MGM's motion to dismiss for lack of personal jurisdiction therefore will be denied.

### 2. Forum Non Conveniens

 MGM seeks dismissal of this case under the doctrine of forum non conveniens as outlined in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The forum non conveniens doctrine has limited vitality today in federal court insofar as it calls for dismissal of a lawsuit. C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3828 (1976). Because of the existence of 28 U.S.C. § 1404(a), a case should be transferred, not dismissed, if there is another federal district court in which the action could have been brought. *Berrigan v. Greyhound Lines, Inc.,* 560 F.Supp. 165, 169 (D.Mass., 1982). See also *Mars, Inc. v. Standard Brands, Inc.,* 386 F.Supp. 1201, 1204 (S.D.N.Y.1974)("It is fairly clear that, in situations in which there is another federal district court where the action could have been brought, § 1404(a) controls and dismissal of the action under the common law doctrine of forum non conveniens is inappropriate.").

■ Based on the facts, this action could have been brought in the District of Nevada where personal jurisdiction and venue would have been proper.[7] Dismissal of this action under the forum non conveniens doctrine thus is unwarranted.

### 3. Title 28 U.S.C. § 1404(a)

■ MGM alternatively seeks a transfer of this action pursuant to 28 U.S.C. § 1404(a). According to 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of the parties and witnesses, in the interest of justice...transfer any civil action to any other district or division where it might have been brought." The decision to transfer a case pursuant to § 1404 rests within the sound discretion of the trial court. *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1 Cir., 1977). "A presumption in favor of the plaintiff's choice of forum exists, and the burden of proving that a transfer is warranted rests with the defendant." *See Fairview Machine & Tool Co., Inc. v. Oakbrook International, Inc.*, 56 F.Supp.2d 134, 141 (D.Mass., 1999)(citing *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D.Mass., 1991) and *McEvily v. Sunbeam–Oster Co., Inc.*, 878 F.Supp. 337, 344 (D.R.I.1994)). In making its determination, the Court must balance several factors, including the convenience of the parties and witnesses, the availability of documents and the interests of justice. *Princess House*, 136 F.R.D. at 18. Of the factors, the convenience to the expected witnesses is probably the most important factor." *Id.*

Thus, the real focal point here is the question of inconvenience to the parties and witnesses. The facts show that no matter where this case is tried, one side or the other will be inconvenienced. Based on the record, this Court sees no meaningful basis to conclude that one side will be more inconvenienced than the other or that some witnesses will be put out significantly more than others by traveling to a distant forum. See *id.* at 21 (Stating that transferring the case to the Western District of Missouri does not appear to enhance the convenience of the parties, but rather would merely shift the inconvenience from one party to the other).

Nor is there any support for the argument that transferring this action to Nevada will better serve the interest of justice. In sum, MGM has failed to carry its burden of showing that the proposed transfer is warranted. I therefore will deny the motion to transfer this action to the District of Nevada.

### 4. MGM's Motion to Dismiss Count IV (Chapter 93A Claim)

Finally, MGM moves to dismiss Count IV of the Amended Complaint, arguing that the acts which WTC claims are unfair and deceptive did not occur "primarily and substantially" in Massachusetts. (# 5 at 14). Massachusetts General Laws Chapter 93A, § 2 proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass.Gen.Laws c. 93A, § 2 (1984). Section 11 pertains to unfair and deceptive acts or practices between persons engaged in business. Mass.Gen.Laws c. 93A, § 11. An unfair or deceptive practice between businesspeople is not actionable under section 11 unless "the actions

---

7. Venue is proper in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. Title 28 U.S.C. § 1391(a).

and transactions constituting the alleged unfair method of competition or the unfair act or practice occurred primarily and substantially within the commonwealth." Id.

In determining whether alleged misconduct occurred "primarily and substantially" in Massachusetts for purposes of c. 93A, the Supreme Judicial Court's approach has been distilled into three basic factors: (1) where defendant committed the deception; (2) where the plaintiff was deceived and acted upon the deception; and (3) the situs of plaintiff's losses due to the deception. *Play Time, Inc. v. LDDS Metromedia Communications, Inc.*, 123 F.3d 23, 33 (1 Cir., 1997). Applying the three factors to the facts of this case leads to the inevitable conclusion that the alleged representations occurred primarily and substantially in Massachusetts.

■ It is the location of the person to whom the deceptive statements are made rather than the location of the person who uttered the deceptive or unfair statements that is significant. *Clinton Hosp. Ass'n. v. Corson Group, Inc.*, 907 F.2d 1260, 1266 (1 Cir., 1990)("The victim's ingestion of a deceptive statement and the subsequent effects from reliance on it are what give the deceptive statement its venomous sting. The site of the victim's ingestion is therefore critical to a determination of whether the deceptive or unfair acts were committed primarily and substantially in the Commonwealth.").

■ WTC's c. 93A, § 11 claim is based on alleged representations that MGM made to WTC during a telephone conversation between the parties on September 13th. (# 8 at 24–25). According to WTC, MGM fraudulently represented that WTC would be permitted to cancel the contract for rooms without being held accountable for liquidated damages. (Id.) With respect to the first factor, MGM made the alleged representations outside of Massachusetts.

However, with respect to the second factor, WTC received and relied on the alleged representations inside Massachusetts. Further, with respect to the third factor, WTC alleges that it sustained a loss inside Massachusetts.

The location of the MGM employee when the alleged representations were made is insufficient to overcome the competing evidence that WTC received the alleged representations in Massachusetts, relied on the alleged representations in Massachusetts, and consequently incurred a loss in Massachusetts. On balance of the three factors, the second and third factors weigh in favor of WTC. Thus, applying the law as formulated in the *Play Time* case, MGM has not met its burden of showing that the alleged unfair or deceptive acts or practices did not occur primarily and substantially in Massachusetts.

However, Play Time may no longer be good law. A little over a month ago, the Supreme Judicial Court decided the case of *Kuwaiti Danish Computer Co. v. Digital Equipment Corporation*, 438 Mass. 459, 781 N.E.2d 787 (2003). In that case, the SJC seemed the reject the Play Time analysis, writing:

We conclude that the analysis required under § 11 should not be based on a test identified by any particular factor or factors because of a tendency to shift the focus of inquiry away from the purpose and scope of c. 93A. Section 11 suggests an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.

*Kuwaiti Danish Computer Co.*, 438 Mass. at 473, 781 N.E.2d at 799 (emphasis supplied).

Since federal courts are bound by the construction given state statutes by the highest state court, the doctrine enunciated in the *Kuwaiti Danish Computer Co.* case is controlling over anything held to the contrary in the *Play Time* case. However, as the quoted portion of the *Kuwaiti Danish Computer Co.* case indicates, the decision as to whether "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth" must be made on the basis of factual findings. Since a Court does not make such findings when ruling on a motion to dismiss, it would seem that a motion to dismiss is no longer an appropriate vehicle for raising the issue.

Therefore, I will deny MGM's motion to dismiss Count IV of the Amended Complaint without prejudice to filing a motion for summary judgment at the close of discovery or, if the facts are in dispute, seeking an evidentiary hearing prior to trial. Since the scope of discovery will be substantially the same whether or not Count IV remains extant, I see no reason to decide the issue prior to the close of discovery.

### IV. Conclusion

For the reasons stated, it is hereby ORDERED that the Defendant MGM's Motion to Dismiss or Transfer Case (# 4) be, and the same hereby is, DENIED. The denial of the motion with respect to Count IV is without prejudice.